Filed 4/18/25  In re M.M. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION FIVE

| | |
|---|---|
| In re M.M. et al., Persons Coming Under the Juvenile Court Law. | B340613 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>R.G.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. 20CCJP03117D) |

APPEAL from an order of the Superior Court of Los Angeles County, Philip L. Soto, Judge.  Affirmed.

Christine E. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Kelly G. Emling, Deputy County Counsel, for Plaintiff and Respondent.

Father appeals from the October 9, 2023 order terminating parental rights to his child, R.M.G. (minor) under section 366.26.[1] We affirm.

The parties are familiar with the facts and procedural history, and our opinion does not meet the criteria for publication. (Cal. Rules of Court, rule 8.1105(c).) We therefore resolve this appeal by memorandum opinion pursuant to Standard 8.1 of the Standards of Judicial Administration and consistent with constitutional principles. (Cal. Const., art. VI, § 14 ["Decisions of the Supreme Court and courts of appeal that determine causes shall be in writing with reasons stated"]; *Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1263, fn. omitted [three-paragraph discussion of issue on appeal satisfies constitutional requirement because "an opinion is not a brief in reply to counsel's arguments. [Citation.] In order to state the reasons, grounds, or principles upon which a decision is based, [an appellate court] need not discuss every case or fact raised by counsel in support of the parties' positions"].)

Father's sole contention on appeal is that the juvenile court and the Los Angeles County Department of Children and Family Services (Department) did not comply with their obligations under the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related California statutes (§ 224 et seq.). According to father, the Department failed to comply with its duty to interview minor's maternal great-grandmother, maternal

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

2

great-grandfather, or maternal step-great-grandfather about possible Indian ancestry.

State law imposes on the Department a first-step inquiry duty to "interview, among others, extended family members and others who had an interest in the child." (*In re H.V.* (2022) 75 Cal.App.5th 433, 438; see § 224.2, subd. (b).) Federal regulations explain that the term "[e]xtended family member is defined by the law or custom of the Indian child's Tribe or, in the absence of such law or custom, is a person who has reached age 18 and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 C.F.R. § 23.2 (2017).) The duty of initial inquiry includes making a meaningful effort to interview available relatives. (*In re Y.W.* (2021) 70 Cal.App.5th 542, 552–553.)

Minor is the only child at issue in the current appeal. However, minor has three older half-siblings who share the same mother (M.M.), but have different fathers. When parental rights to those three half-siblings were terminated in October 2023, M.M. appealed, arguing the Department had failed to comply with its ICWA inquiry obligations. The Department conceded error, "acknowledging that it did not fulfill its duty of inquiry under ICWA because it did not ask the maternal grandfather's family members, maternal uncles E.M. and R.M., maternal aunt R.M., maternal great-grandmother, maternal great-grandfather and maternal step-great-grandfather about possible Indian ancestry[.]" (*In re L.R.* (Mar. 29, 2024, B332255) [nonpub. opn.], p. 3.) This court's opinion conditionally affirmed the termination of parental rights and remanded for the juvenile court to order inquiry of all available extended family members, as well as

3

"other reasonably available maternal relatives, such as maternal grandfather." (*Id.*, at pp. 4–5.) However, focusing on the obligation to interview great-grandparents, we also stated that "absent some information about the possibility of Indian ancestry, we disagree that the Department had an obligation to locate and interview maternal great-grandmother or maternal step-great-grandfather, as they fall outside the definition of extended family members and the record does not contain any information that they have an interest in the children." (*Id.* at p. 4.)

In the current appeal, father argues that the Department fell short of its initial inquiry obligations because it did not interview minor's maternal great-grandmother, maternal great-grandfather, or maternal step-great-grandfather regarding ICWA, despite evidence the Department was aware of those relatives. The Department contends that it satisfied its initial inquiry obligation by asking mother, father, maternal grandmother, maternal grandfather, several maternal uncles and a maternal aunt, all of whom denied Indian ancestry.

Father relies on three references to great-grandparents in the clerk's transcript, none of which support an inference that anyone from the Department spoke to or interviewed any of the relatives father now claims should have been asked about Indian ancestry. First, in the six-month review report, M.M. expressed to the social worker "that she counts [on] the support of maternal grandfather and paternal great grandfather whom she is currently residing with." Second, a single entry in a log of social worker activity indicated that maternal great-grandparents were present during a visit in February 2024 that included minor, her three half-siblings, mother, maternal grandmother, and maternal

4

great-grandparents. The notes stated "[t]he family overall were observed to have a bond." Third, in the permanency planning report, minor's maternal grandmother and caregiver, who was already in the process of adopting minor's three half-siblings, identified her "numerous support systems that help her overall well-being that allows her to be present" for minor as including "maternal great grandparents, her adult children who[] live in the home, and her coworkers."

Father argues that unlike *In re A.M.* (2020) 47 Cal.App.5th 303, 323, which held ICWA did not require the agency to cast about for investigative leads, here the individuals in question were "known to the Department, present at visits, and clearly had an interest in" minor. We disagree with father's argument that the isolated record references to maternal great-grandparents were sufficient to create a duty under ICWA to locate and interview those individuals and ask them about possible Indian ancestry, in light of our earlier holding that ICWA did not impose such an obligation absent any indication of possible Indian ancestry, since the family members in question fall outside of ICWA's definition of extended relatives. (*In re L.R., supra*, at p. 4.) In addition to the fact that no relative has raised any indication of Indian ancestry, we disagree with father's characterization of the evidence as demonstrating that the great-grandparents had an interest in minor sufficient to raise any inquiry duty under ICWA. (Compare *In re A.C.* (2022) 86 Cal.App.5th 130, 131–132 [initial inquiry included the duty to ask a nonrelative extended family member who was the child's caregiver and prospective adoptive parent].)

Finally, in his reply brief, father argues that the Department's reliance on interviewing only maternal

5

grandparents, aunts, and uncles downplays the importance of interviewing older generations. We reject father's effort to create an obligation where none already exists. The facts of this case do not involve a situation where members of a younger generation claim ignorance about possible Indian ancestry but identify members of an older generation that might have missing information. (Compare *In re T.G.* (2020) 58 Cal.App.5th 275, 293 [mother claimed Cherokee ancestry on maternal side and claimed an aunt might have information about possible ancestry on mother's paternal side].)

As the California Supreme Court noted in *Dezi C.*, ICWA does not empower parties to bring numerous appeals on an open-ended basis, and the opinion "does not require reversal in all cases in which every possible extended family member has not been asked about the child's Indian ancestry." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1140.) In the absence of any evidence that anyone raised the possibility of Indian ancestry, or that anyone at the Department in fact spoke to the individuals identified in father's appeal, we decline to hold that it had any obligation to locate and interview them about possible Indian ancestry.

6

## DISPOSITION

The juvenile court's August 28, 2024 order terminating parental rights under Welfare and Institutions Code section 366.26 is affirmed.

NOT TO BE PUBLISHED.


MOOR, J.

I CONCUR:


KIM (D.), J.

7

In re M.M.
B340613


BAKER, Acting P. J., Concurring



 Although I do not join all aspects of the majority's discussion of the issue presented, I agree the juvenile court's order should be unconditionally affirmed.



    BAKER, Acting P. J.